Matter of Franklin St. Realty Corp. v NYC Envtl. Control Bd. (2018 NY Slip Op 05407)





Matter of Franklin St. Realty Corp. v NYC Envtl. Control Bd.


2018 NY Slip Op 05407


Decided on July 19, 2018


Appellate Division, First Department


Tom, J.P.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 19, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter Tom, J.P.
Richard T. Andrias
Barbara R. Kapnick
Troy T. Webber
Cynthia S. Kern, JJ.


101767/15 101769/15 101768/15 100303/16 101770/15 

[*1]In re Franklin Street Realty Corp., Petitioner,
v
NYC Environmental Control Board, et al., Respondents.
In re J.P. & Associates Properties Corp., Petitioner,
v
NYC Environmental Control Board, et al., Respondents.
In re 41-03 ave Realty Corp., Petitioner,
v
NYC Environmental Control Board, et al., Respondents.
In re 23-06 Jackson Ave Realty Corp., Petitioner,
[*2]
v
NYC Environmental Control Board, et al., Respondents.



Petitioners challenge the determinations of respondent
NYC Environmental Control Board, dated May 28, 2015,
and October 29, 2015, which found that they engaged inunauthorized outdoor advertising and imposed penalties therefor.



Cohen, Hochman & Allen, New York (Lindsay I. Garroway and Nicole Beletsky of counsel), for petitioners.
Zachary W. Carter, Corporation Counsel, New York (Barbara Graves-Poller and Claude S. Platton of counsel), for respondents.



TOM, J.P.


In these article 78 proceedings, petitioners seek to annul determinations of the New York City Environmental Control Board (ECB) which found that petitioners engaged in unauthorized outdoor advertising and imposed penalties for such conduct. We find the determinations of the ECB that petitioners engaged in unauthorized outdoor advertising, and imposing penalties for such violations, have a rational basis and were not arbitrary and capricious.
Petitioners 23-06 Jackson Avenue Realty Corp. (Jackson Corp.), 41-03 31st Avenue Realty Corp. (31st Avenue), Franklin Street Realty Corp. (Franklin Street), and J.P. & Associates Properties Corp. (JP & Associates) are the owners of five buildings that displayed "advertising signs" promoting the "Law Offices of John J. Ciafone, Esq." on their front facades. Mr. Ciafone purportedly owns each of the petitioner corporations and used the signs, for which he had not obtained permits, to promote his law practice, under an entity known as "Ciafone, P.C.."
In July and October 2014, a Department of Buildings (DOB) inspector visited each of the five buildings, and after observing the signs on the front of the buildings, issued notices of violations of Administrative Code of City of NY §§ 28-105.1, 28-415.1, and 28-502.6, and Zoning Resolution § 32-63.
The violations charged each building owner with operating as an outdoor advertising company (OAC) by displaying a sign without obtaining a permit. The remedy sought by the violations was the removal of the illegal signs or the owners properly registering the signs.
Notably, while there is an exception under the Administrative Code for "accessory signs," which promote onsite activity that benefits the owner, residents or visitors associated with the building's primary use, the notices here charged that the petitioners' displays of the non-DOB registered signs, which advertised, without permits, for law offices that were not located on those premises, constituted "Class 1" violations of the outdoor advertising rules and zoning rules regulating outdoor advertising signs posted by an OAC.
The notices were reviewed in a series of separate hearings before two hearing officers. The parties adopted common facts and arguments in all the proceedings.
The evidence at the hearings established that Jackson Corp. owns the building located at 23-06 Jackson Avenue, in Long Island City, New York, having acquired it from Ciafone on March 12, 2014; JP & Associates acquired the building at 154 Huron Street, Brooklyn, from an [*3]individual other than Ciafone on September 25, 2006; 31st Avenue owns the property located at 41-03 31st Avenue in Queens, having purchased it from an unrelated entity in 2009; Franklin Street owns the building located at 202 Franklin Street in Brooklyn, having purchased it from an unrelated entity in 2010; and JP & Associates owns the walk-up apartment building located at 33-51 Vernon Boulevard, in a residential district in Queens, having purchased it from an unrelated individual in 2005.
Ciafone testified on behalf of each building owner as he was either the sole shareholder or a member of each owner corporation, although records showed that Gina Argento, Ciafone's wife, was the president and sole shareholder of 31st Avenue.
Ciafone admitted that he arranged for the signs to be affixed to the buildings without obtaining DOB permits. However, he argued that petitioners did not make advertising space available "to others" because no meaningful differences separate Ciafone, Ciafone P.C., and the corporate building owners, and that the signs were "accessory" signs because Ciafone provided legal services at each building that amounted to an accessory use. In particular, Ciafone argued that he owns all the buildings through the corporate entities, and that he also owns his own law practice, promoted on the signs, which operates from spaces in each of the buildings, such that the building owners were not acting as OACs when the signs merely promoted the legal business of their principal that operated therein, which also made the signs an accessory use.
More specifically, as to each building, Ciafone testified that he used various spaces as "satellite offices," including vacant residential apartments, a space within a storefront, a small office in the back of a barbershop, a basement storage area, and that he also met clients in a restaurant located at one of the buildings.
DOB argued that the evidence established that Ciafone provides legal services through "Ciafone P.C.," a professional corporation that maintains no staff or regular business hours at any of the cited properties, and that the signs did not identify the buildings as locations for Ciafone P.C.'s operations. DOB further argued that Ciafone did not own the buildings individually, and that Ciafone P.C. provided no onsite services that amounted to "accessory use."
In a series of decisions, the hearing officers rejected the building owners' argument that the signs were accessory signs, finding that the signs do not state that the advertiser's business operates on the lot, and declining to credit the claim that the advertised business is conducted on the lot.
However, the hearing officers concluded that petitioners were not acting as OACs because Ciafone, owner in all but name of the buildings, was selling himself on the signs, and not making space available "to others." In this regard, the hearing officers relied on NYC v Joseph Nativo (ECB Appeal No. 1000307 [August 19, 2010]), in which ECB found that where the individual owner of the building is the sole owner of the companies advertised on the building facade, it does not "interpret making space on signs available to others' to encompass the display of signs by a property owner that advertise[s the] services of companies solely owned by such property owner."
Notably, the hearing officers found that Ciafone is the owner of the buildings under a corporate name, and that the advertised entity is not a different corporation, but a law office solely owned by Ciafone, adding that though the "law office is a PC, that is not the equivalent of a corporate entity considered to be a person' in law with its own identity." Thus, the hearing officers concluded that Nativo applies, and that although the signs were "not legal," the building owners were not OACs subject to Class 1 charges.
On administrative appeal, ECB issued decisions and orders dated May 28, 2015 and October 29, 2015 reversing the decisions of the hearing officers and finding petitioners in violation of Class 1 charges. ECB concluded that the building owners were operating as OACs, finding that the buildings were owned by the particular corporate entities, not Ciafone or Ciafone [*4]P.C., and that the building owners did not own the company (Ciafone law offices or P.C.) whose services were being advertised on the signs.
ECB found that in cases decided after Nativo, including NYC v 415 89th Street LP (ECB Appeal No. 1200974 [January 31, 2013]), NYC v Lodz Development (ECB Appeal No. 1400355 [July 31, 2014]) and NYC v Stahl and Stahl, LLC (ECB Appeal No. 1400137 [April 24, 2014]), it had clarified that if the company being advertised and the owner of a building that provides space for the sign are two separate corporations, even though there may be an overlapping of principals, Nativo is inapplicable. Here, ECB held that there was no reason to apply the Nativo exception simply because the advertised company was organized as a professional corporation as opposed to a different corporate form. Accordingly, ECB reversed the hearing officers' decisions and imposed $10,000 penalties for each Class 1 violation.
Petitioners then commenced these article 78 proceedings seeking to reverse ECB's decisions. Supreme Court transferred the proceedings to this Court, finding a question of whether there was substantial evidence to support the ECB's determinations pursuant to CPLR 7803[f].
The proper standard of review is whether ECB's determination "was made in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious, or was an abuse of discretion" (Matter of Vataksi v Environmental Control Bd., 107 AD3d 905, 906 [2d Dept 2013]; Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). If we find that the determination is supported by a rational basis, we must sustain the determination even if we conclude that we would have reached a different result than the one reached by the agency (Peckham, 12 NY3d at 431). "Further, courts must defer to an administrative agency's rational interpretation of its own regulations in its area of expertise" (id.) unless the question is pure legal interpretation of statutory language that is unambiguous (see Matter of Beekman Hill Assn. v Chin, 274 AD2d 161, 167 [1st Dept 2000], lv denied 95 NY2d 767 [2000]).
Where we are called upon to construe statutory language, although we need not "unquestioningly defer to the administrative agency," we will give "due consideration to [the agency's] practical construction of the ordinance" (Matter of Mason v Department of Bldgs. of City of N.Y., 307 AD2d 94, 100-101 [1st Dept 2003], lv denied 1 NY3d 503 [2003]).
Administrative Code § 28-502.1 states that an OAC is "[a] person, corporation, partnership or other business entity that as a part of the regular conduct of its business engages in or, by way of advertising, promotions or other methods, holds itself out as engaging in the outdoor advertising business." An Outdoor Advertising Business is "[t]he business of selling, leasing, marketing, managing, or otherwise either directly or indirectly making space on signs situated on buildings and premises within the city of New York available to others for advertising purposes, whether such advertising directs attention to a business, profession, commodity, service or entertainment conducted, sold, or offered on the same or a different zoning lot . . . ."
When construing these statutory provisions by their plain terms, as one must when statutory interpretation does not involve specialized knowledge (see Matter of Belmonte v Snashall, 2 NY3d 560, 565-566 [2004]), it is clear that the conduct of the petitioners falls within the statutory definition of an OAC (Matter of JT Tai & Co., Inc. v City of New York, 85 AD3d 433, 434-435 [1st Dept 2011], lv denied 18 NY3d 804 [2012]). Indeed, petitioners, which are corporations, made space on signs available to Ciafone's law practice (a professional corporation), a separate and distinct entity. Of course, it is fundamental that individuals, corporations, and partnerships are each recognized as separate legal entities, and in this statutory context constitute "others" regardless of the common principal ownership or connection between the entities. Indeed, "[a]s a general rule, the law treats corporations as having an existence [*5]separate and distinct from that of their shareholders" (Billy v Consolidated Mach. Tool Corp., 51 NY2d 152, 163 [1980]; see also Port Chester Elec. Constr. Corp. v Atlas, 40 NY2d 652, 656 [1976]["Corporations, of course, are legal entities distinct from their managers and shareholders and have an independent legal existence. Ordinarily, their separate personalities cannot be disregarded"]).
ECB rationally rejected petitioners' argument that they had not made the signs available to "others." The record shows that the building owners are not Ciafone or Ciafone P.C, but separate corporate entities, and that the advertising signs promoted legal services by Ciafone, not any services of the corporate entities that own the buildings. Contrary to petitioners' argument, there is no basis for overturning ECB's determination that, in these circumstances, the advertising space was made available "to others." Nor is ECB's interpretation of the statutory language arbitrary or irrational. Further, this reading is supported by ECB's precedents post Nativo, and ECB rationally applied those holdings in this case.
In Nativo, an individual advertised his own closely held corporations on a building he personally owned. Under those circumstances, ECB determined that he could advertise the corporations he solely owned without becoming an OAC. However, in subsequent ECB decisions, where the properties were owned by corporations instead of individuals, the corporate owner qualified as an OAC where it allowed for advertisement of a corporation other than the building-owning corporation itself (see NYC v 415 89th Street, L.P.; NYC v Stahl and Stahl, LLC).
Moreover, and critical to this case, in Lodz, ECB found Nativo inapplicable where the company being advertised and the owner of the building providing space for the sign were two separate corporate entities, even where there is an overlapping of principals. Therefore, ECB has narrowly read Nativo to apply where an individual owns the building and the sign advertises a separate corporation owned solely by the individual, which is not the case here because the buildings were not owned by Ciafone as an individual but by corporate entities.
In sum, both ECB's reading of the statute and its application of its own precedent to this case were rational, and not arbitrary or capricious.
Petitioners argue that this case is factually unique because the buildings are essentially owned by an individual in corporate form, and the advertisements were for that same individual. However, ECB rationally rejected that argument, explaining that, generally, there is a need for stronger deterrence where buildings are owned by corporations who advertise for separate corporations (even if there is overlapping ownership), rather than when a building is owned by an individual who advertises for his or her own self. In this regard, ECB notes that corporations are more likely than individuals to earn significant profits from unlawful advertising. While the dissent contends that this concern is not present here, there is no distinction between this case and the myriad other cases in which ECB found the building owners to be OACs even though they were not corporations earning significant profits from the illegal sign or signs at issue.
In fact, the intent of this local law was to have strong enforcement of outdoor sign regulation, providing for both criminal and civil penalties for violators (Local Law 14, Report of the Committee on Land Use - Regulation of Outdoor Advertising [February 7, 2001]). ECB's reading of the statute to prohibit a corporate owner from advertising for a separate entity without proper registration furthers the goal of strong enforcement of the regulations. Contrary to the dissent's position, there are no exceptions in the statute which would permit petitioners to make advertising space available to others under the factual circumstances of this case without violating the statute. There is also no basis to find that enforcement of these regulations should not apply to petitioners. Thus, it is rational, in this circumstance, for ECB to determine that Nativo should not apply, and that the building owner should qualify as an OAC with respect to the advertisement.
While the dissent perceives it to be unfair to penalize petitioners because Ciafone chose to form corporate entities to own the buildings, it was not irrational, particularly given the goals of the law, for ECB to find otherwise. Stated differently, even if there could be a reasonable basis for extending the Nativo exception to this situation, ECB did not act irrationally in deciding that Nativo should not apply in such circumstances.
The solution to the concerns articulated by the dissent is simple. Ciafone may own these properties through corporations and the petitioners may erect or display whatever signs they like on their buildings without penalty by properly registering them in the manner provided in Administrative Code § 28-502.1 et seq.
Contrary to ECB precedent and without any support or authority, the dissent has fashioned an extremely high burden in order for a person or entity to be deemed an OAC. Specifically, the dissent urges that in order to be an OAC petitioners would have had to "charge Ciafone or Ciafone P.C. for the signs" and/or would have to "market or lease space to advertising companies or solicit advertisers to place signs thereon as part of the regular conduct of their business." Yet, the dissent reads one portion of the statute and ignores the remainder of the statute.
Based on the plain language of the statute, all that is required to be an OAC is to engage in the outdoor advertising business, which simply means "making space on signs . . . available to others for advertising purposes" (see Matter of JT Tai & Co., 85 AD3d at 434-435). While conduct - such as marketing, soliciting, or large advertising profits - tending to show an entity is holding itself out as an OAC would certainly qualify that entity as an OAC, lesser conduct will suffice under the statute. Indeed, it is enough if an entity which owns a building makes advertising space available on that building to another entity, particularly where, as here, the space is made available for advertising by Ciafone's law practice for years at a time. It is not required that the building owner be primarily in the business of marketing signs as suggested by the dissent. Rather, an entity may be an OAC by consistently and regularly providing space on its building to another entity for advertising.
The dissent would alter the appropriate standard of review and infringe upon the agency's authority to rationally interpret its own rules and regulations. To reiterate, our review is a deferential one and we must support an agency's determination that has a rational basis even if we would have reached a different result than the one reached by the agency (Peckham, 12 NY3d at 431). Further, as part of our review, we "must defer to an administrative agency's rational interpretation of its own regulations in its area of expertise" (id.). Contrary to the dissent's suggestion, the plain reading of the statute is not undermined by Nativo. Rather, the ECB - the agency tasked with interpreting and enforcing these regulations - created a narrow and rational exception to the general rule that the making space "available to others" requirement is satisfied whenever the owner of the sign and the company advertised are separate entities. Thus, ECB rationally distinguishes this holding from Nativo, which involved an individual building owner advertising his own companies on the building facade.
The creation of a narrow exception for circumstances involving a building owned by an individual who advertises for his or her self is within the authority of ECB and, because it is a rational exception, it is not for this Court to dictate how ECB should construe or enforce the relevant regulations.
The hearing officers in these matters, with whom the dissent agrees, did not find that petitioners were not OACs because they failed to meet the test crafted by the dissent. Rather, the hearing officers only found (albeit incorrectly) that petitioners were not OACs because they had not provided advertising space to others, under their reading of Nativo. Regardless, the hearing officers' holdings, relied upon by the dissent, have been correctly overruled by ECB on administrative appeal.
In case after case, the ECB has never required such a high bar in order to classify a building owner as an OAC. Instead, ECB merely requires an owner to directly or indirectly make space available to others for advertising purposes, a much lower bar that comports with the language of the Administrative Code section.
For example, in 415 89th Street, the ECB found the building owners to be an OAC where for two years they placed one sign on their building advertising a restaurant owned by a separate corporation (owned by the building owners' children), even though no fee was charged. Although the owners argued on administrative appeal that "advertising was not part of the regular conduct of its business," the ECB concluded the owners were an OAC because "[a] sign was displayed on the building with Respondent's consent while the restaurant advertised operated at a separate address. In addition . . . a different corporate entity owned the restaurant advertised." Notably, ECB remarked that displaying a sign for a significant amount of time warranted an inference "that the advertising sign was at least a part of Respondent's regular course of business." Further, ECB found it unimportant that the owners received no payment for the advertising as "an OAC must only make space available for advertising, not necessarily sell or lease the space."
Similarly, in Stahl and Stahl LLC, ECB found the building owner to be an OAC where it permitted a sign to be installed on its building which advertised a condominium at a different location. And, in NYC v Mohammad Harris (ECB Appeal No. 1400636 [Aug. 28, 2014]), ECB found the owner to be an OAC even though he merely leased space on his building for another person to erect the cited sign, did not solicit advertisers or maintain the sign, and had stopped receiving payments before the date of the violations. Significantly, ECB determined that it was sufficient that the owner "indirectly made space on a sign available to others for advertising purposes as part of the regular conduct of his business."
In sum, the dissent's interpretation of the relevant code section is completely at odds with longstanding ECB precedent and the plain language of the section itself, and petitioners in these matters surely meet the definition of an OAC.
The dissent distinguishes 415 89th Street and Stahl and Stahl from this case. However, the distinctions it raises are inconsequential. The point of citing those cases was to demonstrate that the ECB has consistently required very little in order to qualify as an OAC, which comports with the language of the statute, and is in opposition to the dissent's construction of the regulations. Despite the fact that ECB's rulings have a rational basis, the dissent seeks to overturn years of ECB precedent on these matters.
Further, contrary to the dissent's contention, petitioners should not be able to avoid ECB's broad reading of the OAC definition because the signs advertised the "law offices" of Ciafone, rather than "Ciafone P.C." Indeed, petitioners should not be able to do an end run around the statute and ECB's broad reading by not identifying the true corporate structure of the business being advertised. The dissent's focus on Ciafone's potential exposure to his clients with respect to his professional activities is completely irrelevant to the analysis here. Although a professional corporation (PC) may be different from a corporation (LLC), the point is that Ciafone should not be able to use his professional corporation somehow to claim that petitioners did not make space available to an "other" for advertising purposes, as his professional corporation is an entity separate and distinct from each of the petitioners. Nor is it availing that petitioners did not receive rent for the signs. As ECB has repeatedly held, the absence of the receipt of money at the time of violations is not a decisive factor in determining whether an owner is an OAC (see NYC v Mohammad Harris; see also NYC v 415 89th Street, supra). Rather, the crux of the analysis, which is present here, is whether the owner making space available for advertising to a separate entity.
Petitioners' arguments that they are exempt from OAC liability because the signs are [*6]accessory use signs and that the fines imposed for the violations are excessive - alluded to by the dissent - are unpreserved (see Matter of JT Tai, 85 AD3d at 435) and in any event without merit (see Matter of Contest Promotions-NY LLC v New York City Bd. of Stds. & Appeals, 116 AD3d 446 [1st Dept 2014]; OTR Media Group, Inc. v City of New York, 83 AD3d 451, 454 [1st Dept 2011]). Further, these substantial civil penalties were created to coerce compliance with the outdoor advertising rules, and petitioners had the ability to mitigate the accrual of the fines by immediately removing the signs (see 83 AD3d at 454). Notably, ECB asserts that petitioners continued to advertise Ciafone's law practice even after the notices of violation were served. Contrary to the dissent's intimation, the mention of petitioners' continued advertising is raised not with regard to whether they made space "available to others" but in relation to the excessive fine claim, which appears petitioners did not wish to mitigate. In sum, ECB's determinations were rationally based and should be confirmed.
Accordingly, the determinations of respondent NYC Environmental Control Board, dated May 28, 2015, and October 29, 2015, which found that petitioners engaged in unauthorized outdoor advertising, and imposed penalties therefor, should be confirmed, the petitions denied, and the proceedings brought pursuant to CPLR article 78 (transferred to this Court pursuant to CPLR 7803[4] by orders of Supreme Court, New York County [Shlomo Hagler, J.], entered July 19, 2016), dismissed.
All concur except Andrias and Kapnick, JJ. who dissent in an Opinion by Andrias, J.




ANDRIAS, J. (dissenting)


Under the majority's determination, if an attorney holds title to his own building in a corporate name for tax or liability purposes, and advertises his or her own law practice, the "Nativo exception" will not apply and the holding company will be deemed to be making space "available to others for advertising purposes" within the meaning of sections 28-502.1 and 28-502.6 of the Administrative Code of the City of New York. If the same attorney holds title to the same building in his individual name and advertises the professional corporation he forms for tax or liability purposes to conduct his law practice, the Nativo exception will apply, and the attorney will not be deemed to be making an outdoor advertising sign "available to others."
This disparate treatment between buildings owned by an individual who advertises the services of his or her own corporation, and buildings owned by a corporation that advertises the services of its own principal, is so unrelated to the achievement of the legitimate purposes underlying the outdoor advertising laws as to be irrational, and is, therefore, arbitrary and capricious. In either scenario, at one end of the transaction you have a corporation and at the other end its principal, both of whom are distinct but interrelated legal entities, and it is logically absurd to find that the owner is making an outdoor advertising sign "available to others" in one instance but not the other. Accordingly, I respectfully dissent.
The Department of Buildings (DOB) issued multiple notices of violations to petitioner corporations alleging that the signs on their buildings advertising the services of the "LAW OFFICES OF JOHN J. CIAFONE, ESQ.," without permits, violated Administrative Code §§ 28-105.1, 28-415.1, and 28-502.6 and Zoning Resolution § 32-63, regulating outdoor advertising signs posted by an "outdoor advertising company" (OAC).
Section 28-502.1 of the Administrative Code defines an OAC as "a person, corporation, partnership or other business entity that as part of the regular conduct of its business engages in or, by way of advertising, promotions or other methods, holds itself out as engaging in the outdoor advertising business." An "Outdoor Advertising Business" is defined as "the business of selling, leasing, marketing, managing, or otherwise either directly or indirectly making space [*7]on signs situated on buildings and premises within the city of New York available to others for advertising purposes . . ." (emphasis added). Section 28-502.6.2 provides that "[i]t shall be unlawful for an outdoor advertising company to sell, lease, market, manage or otherwise make available to others for advertising purposes space on a sign that has been erected, maintained, attached, affixed, painted on or in any other manner represented on a building or premises in violation of any provision of the zoning resolution, this code, the 1968 building code or rules adopted pursuant thereto or to enter into any agreement for such purpose" (emphasis added).
The violations that apply to OACs are Class 1 ("immediately hazardous") violations, for which the enhanced Penalty Schedule set forth in Title 48, § 3-103 of the Rules of the City of New York (RCNY) imposes a minimum fine of $10,000 per violation for first violations. In contrast, that same schedule provides that non-OACs that violate the sign regulations will be liable for a minimum fine of $800 per violation for first violations.
In a series of decisions, the hearing officers, relying on NYC v Joseph Nativo (ECB Appeal No. 1000307 [August 19, 2010]), held that although the signs were not legal or a permissible "accessory use," the violations did not rise to the level of Class 1 because petitioners were not OACs. In Nativo, the NYC Environmental Control Board (ECB) held that "[f]or purposes of the statute, the Board does not interpret making space on signs available to others' to encompass the display of signs by a property owner that advertise services of companies solely owned by such property owner." The hearing officers found that Nativo governed because Ciafone was the principal of the real estate holding companies that owned the subject buildings and the advertised entity was not a different corporation, but a law office solely owned by Ciafone (see also NYC v Halvatzis, ECB Appeal No. 1200649 [October 25, 2012] [building owner did not qualify as OAC where undisputed evidence established that the painted sign advertised her husband's and brother-in-law's business, who also shared ownership of the building]). While Ciafone conducted his practice as a professional corporation (Ciafone P.C.), the hearing officers found that a professional corporation was not the equivalent of a corporate entity considered to be a person in law with its own identity because a shareholder of a professional corporation is personally and fully liable and accountable for any negligent or wrongful act or misconduct committed by him or by any person under his direct supervision and control while rendering professional services on behalf of such corporation (see Business Corporation Law § 1505).
In decisions and orders dated May 28, 2015 and October 29, 2015, ECB reversed the hearing officers' decisions and imposed enhanced fines on petitioners totaling $380,000. ECB found that petitioners were OACs because the buildings were owned by particular corporate entities that did not own Ciafone law offices or Ciafone P.C., whose services were being advertised on the signs. ECB reasoned that in cases it decided after Nativo, it clarified that if the company being advertised and the owner of the sign are separate corporations, Nativo is inapplicable, even though there may be an overlapping of principals (see NYC v 415 89th Street, L.P., ECB Appeal No. 1200974 [Jan. 31, 2013]; NYC v Stahl and Stahl, LLC, ECB Appeal No. 1400137 [Apr. 24, 2014]; NYC v Lodz Development, LLC, ECB Appeal No. 1400355 [July 31, 2014]). ECB also found that there was no reason to apply the Nativo exception simply because the advertised company was organized as a professional corporation as opposed to a different corporate or business form. The majority confirms these determinations and dismisses the petitions.
Generally, judicial review in an article 78 proceeding is limited to whether the administrative determination "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803(3); see Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Peckham, 12 [*8]NY3d at 431). While deference is generally given to an administrative agency's interpretation of the statutes it enforces, when the question is one of pure statutory reading and analysis, as here, there is little basis to rely on the expertise of that agency (see Matter of Belmonte v Snashall, 2 NY3d 560 [2004]).
Applying these principles, ECB's determinations that petitioners were acting as OACs because they were making space "available to others" does not have a rational basis. In ruling that the Nativo exception does not apply in this case, ECB draws an arbitrary and capricious distinction based on the form of ownership chosen by the building owner, which is neither mandated by the language of Administrative Code sections 28-502.1 or 28-502.6 nor the purposes for which the rules governing OACs, including the imposition of enhanced penalties, were enacted.
Ciafone claims that he owned the buildings in corporate form, rather than individually, for tax and liability purposes, a common practice in the real estate industry. As a consequence of this choice of ownership form, ECB found that the Nativo exception did not apply and that petitioners qualified as OACs because the corporations that owned the buildings did not own the entity that advertised on the sign. However, had Ciafone chosen to hold title to the buildings in his individual name, Nativo would have governed and he would not have been deemed an OAC if he advertised his own law practice, whether individually or as a professional corporation.
This distinction in treatment based on the form of ownership selected by the building owner is arbitrary and capricious, there being no substantial difference for outdoor advertising purposes between Ciafone holding title to the buildings in his individual name or in the name of a holding company. In either case, Ciafone was effectively the owner of and/or controlled the buildings and was advertising his own law practice, and it is irrational to penalize him for forming corporate entities to own the buildings for tax and liability purposes. Indeed, petitioners presented evidence that they did not market or lease space on their properties to advertisers or solicit companies to place signs on the properties "as part of the regular conduct of its business," or "hold[] [themselves] out as engaging in the outdoor advertising business," as required by Section 28-502.1 of the Administrative Code. Furthermore, the signs advertised the "LAW OFFICES OF JOHN J. CIAFONE, ESQ." and the services he performed; they did not identify or reference his professional corporation in any manner.
The majority finds that ECB's determinations that petitioners qualified as OACs have a rational basis and are not arbitrary and capricious because petitioners, which are corporations, made space on signs available to Ciafone's law practice (a professional corporation), a separate and distinct legal entity, and are therefore "others" within the meaning of statute. In this regard, the majority states that there is no exception under the statute which would permit petitioners to make space available to others under the factual circumstances of this case without violating the statute.
However, the majority's view that the making space "available to others" requirement is satisfied whenever the owner of the sign and company advertised are separate and distinct legal entities is undermined by Nativo. In Nativo, ECB ruled that an individual owner who displays a sign that advertises the services of a company he or she solely owns does not qualify as making space "available to others for advertising purposes" —- even though, as the majority notes, individuals, corporations or partnerships are separate legal entities. The majority provides no cogent reason why an individual who advertises the services of a corporation he solely owns is not deemed to be making space available to others, even though they are separate legal entities, but a corporation that advertises the services of its principal is.
NYC v 415 89th Street, L.P. (ECB Appeal No. 1200974), cited by the majority, differs from the facts before us. There, while the respondent owned the cited premises on the date of violation, a different corporate entity, which was not owned by the respondent, owned the [*9]restaurant advertised on the sign. Thus, ECB found that "despite Respondent's principal's close ties to the restaurant that was advertised, Respondent did not own it and thus made the advertising space available to others."
Stahl and Stahl, LLC (ECB Appeal No. 1400137), is also distinguishable on its facts. There, the respondent argued that because it was displaying an advertisement for a related entity, it was not making space on the sign on its building available to others for advertising purposes and therefore was not acting as an OAC. ECB found that the "evidence submitted by Respondent does not, however, show that Stahl Real Estate has a controlling interest in either Respondent or 76th and Broadway Owner." Consequently, ECB concluded that the respondent made space on the sign available to others. ECB further stated that "even if Respondent had proven that Stahl Real Estate has a controlling interest in Respondent and 76th and Broadway Owner, the Board has previously found that Respondent made space available on the sign to 76th and Broadway Owner, a distinct corporate entity, for advertising purposes. See NYC v. Stahl and Stahl, LLC (ECB Appeal No. 1301106, January 30, 2014)." In that prior decision, ECB found:
"In NYC v. Joseph Nativo (ECB Appeal No. 1000307, August 19, 2010), the Board found that the respondent was not an OAC because he was the sole owner of the corporations whose services were advertised on the cited signs and did not engage in outdoor advertising business as part of the regular conduct of his business. Here, according to Respondent's attorney in her appeal, Respondent did not own Laureate, as alleged at the hearing; they were both separate entities owned by a third company, The Stahl Organization. See NYC v. 415 89th Street LP (ECB Appeal No. 1200974, January 31, 2013), where the Board held that despite the respondent's principal's close ties' to the company that the sign was advertising, Respondent did not own it and thus made the advertising space available to others.' Therefore, even under the facts alleged for the first time on appeal, Respondent was making space available to others and was engaging in the outdoor advertising business."
Here, Ciafone is the principal of and/or controls the petitioner holding companies.
The majority rejects petitioners' argument that the Nativo exception applies, stating that ECB, following its own precedent (which has not been previously reviewed by this Court), rationally found that, generally, there is a need for stronger deterrence where buildings are owned by corporations who advertise for separate corporations (even if there is overlapping ownership), rather than when a building is owned by an individual who advertises for his or her self. However, this rationale is not applicable to the circumstances of this case.
The City Council amended the Administrative Code in 2001 by adopting Local Law 14, which sought to enhance the City's ability to enforce outdoor advertising regulations. An enhanced enforcement scheme for OACs, with increased penalties, was deemed necessary for deterrence purposes because OACs were routinely providing the DOB with false and/or misleading information to improperly obtain accessory permits, or installing billboards without any permit whatsoever, and the existing fines were insubstantial compared with the revenue being generated (see Clear Channel Outdoor, Inc. v City of New York, 608 F Supp2d 477, 483-484 [SD NY 2009], affd 594 F3d 94, 100 [2d Cir 2010], cert denied 562 US 981 [2010]). Thus, rather than compelling compliance, the prior lower fines were being absorbed by OACs as a cost of doing business (id)[FN1]. While the majority maintains that ECB's reading of Section 28-502.1 to [*10]prohibit a corporate owner from advertising for a separate entity without registration furthers this goal of deterrence through the strong enforcement of regulations, in contrast to OACs, which market advertising space as a revenue source, non-OACs do not engage in, or hold themselves out as engaging in, the outdoor advertising business. Here Ciafone, an individual, was the principal of the real estate holding companies that owned the subject buildings and advertised his own services. Petitioners did not charge Ciafone or Ciafone P.C. for the signs and did not market or lease space to advertising companies or solicit advertisers to place signs thereon as part of the regular conduct of their businesses. Under these circumstances, the notion that corporations are more likely than individuals to earn significant profits from unlawful advertising, and will absorb lower fines as a cost of doing business, is irrelevant.
The majority also states that petitioner should not be able to avoid ECB's broad reading by advertising the law office of Ciafone, rather than identifying his PC. The majority reasons that to rule otherwise would allow petitioners to do an end run around the statute and ECB's broad reading by not identifying the true corporate structure of the business being advertised.
However, Section 1505 of the Business Corporation Law, "Professional relationships and liabilities," provides:
"(a) Each shareholder, employee or agent of a professional service corporation and a design professional service corporation shall be personally and fully liable and accountable for any negligent or wrongful act or misconduct committed by him or by any person under his direct supervision and control while rendering professional services on behalf of such corporation.
"(b) The relationship of an individual to a professional service corporation or a design professional service corporation with which such individual is associated, whether as shareholder, director, officer, employee or agent, shall not modify or diminish the jurisdiction over him of the licensing authority and in the case of an attorney and counsellor-at-law, the other courts of this state."
Thus, in terms of his exposure to clients targeted by the billboards for negligent or wrongful conduct in the performance of his professional duties, there is no difference whether Ciafone advertised Ciafone P.C. or his law office. In any event, Ciafone advertised his personal services as an attorney at law and the fact that he may have operated his practice as a professional corporation does not form a rational basis to distinguish Nativo.
Although the majority finds it notable that petitioners continued to advertise Ciafone's law practice even after the notices of violation were served, that has no bearing on whether petitioners were making advertising space "available to others" in the first instance. Similarly, the majority's observation that petitioners could have avoided the fines had they properly registered the signs or removed them is irrelevant to that determination.
Contrary to the view of the majority, this dissent is not based on the view that the fines imposed for the violations are excessive. This Court has held that the penalty schedule imposing enhanced fines on OACs is lawful and that the increased penalties are necessary to deter violations by OACs in particular (see OTR Media Group, Inc. v City of New York, 83 AD3d 451, 453—454 [1st Dept 2011]). Rather, this dissent is based solely on the grounds that ECB's determination that petitioners qualify as OACs is not rational on the record before us.
In sum, according to ECB's interpretation, which the majority adopts, an owner's ability to raise the Nativo exception will rise and fall on the way he or she chooses to structure the ownership of their buildings. This choice is often a matter of accounting or tax planning or liability concerns, rather than a meaningful reflection of who controls the property or business, and has no impact on the legitimate concerns underlying the outdoor advertising rules. This disparate treatment between buildings owned by individuals who advertise the services of a corporate entity they own, and those owned by corporate entities who advertise their principal's own services is so unrelated to the achievement of any combination of legitimate purposes as to be irrational (see generally Matter of Felice-Zwaryczuk v New York State Teachers' Retirement Sys., 122 AD3d 1139, 1141—1142 [3d Dept 2014]).
Accordingly, I would annul the determinations of respondent ECB, dated May 28, 2015, and October 29, 2015, which reversed the decisions of the hearing officers dismissing the Notices of Violation issued by DOB against petitioners, and grant the petitions.
Determinations of respondent NYC Environmental Control Board, dated May 28, 2015, and October 29, 2015, confirmed, the petitions denied, and the proceedings brought pursuant to CPLR article 78 (transferred to this Court pursuant to CPLR 7803[4] by orders of Supreme Court, New York County [Shlomo Hagler, J.], entered July 19, 2016), dismissed.
Opinion by Tom, J.P. All concur except Andrias and Kapnick, JJ. who dissent in an Opinion by Andrias, J.
Tom, J.P., Andrias, Kapnick, Webber, Kern, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 19, 2018
CLERK



Footnotes

Footnote 1:In 2005, the City Council adopted Local Law 31 which revised Local Law 14. Administrative Code §§ 26-259 and 26-262, as adopted by Local Laws 14 and 31, were repealed in 2008 by enactment of the New York City Construction Code, without changing their material provisions. The definition of an OAC is now set forth in Administrative Code § 28-502.1, and the provision providing for increased civil penalties for OACs is set out in Administrative Code § 28-502.6. As a result of this transfer, ECB's penalty schedule for Construction Code violations, which remains unchanged in all relevant respects, is now set forth at Title 48, § 3-103 of the RCNY.